# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WADE BEST,

        Plaintiff,

vs.                                                           CIV. No.  04-0357 BB/WDS

CITY OF ALBUQUERQUE,
GILBERT GALLEGOS in his
individual capacity, MICHAEL
ARBOGAST, in his individual
capacity, and DARCY HOFFMAN,
in her individual capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of two motions for summary judgment (Docs. 19, 127) and a motion to dismiss (Doc. 131) filed by Defendants.  Having considered the submissions of the parties and the applicable law, the Court will grant each of these motions in part, and deny each in part.

**Motion for Partial Summary Judgment on Municipal Liability Claim:**  Defendants filed this motion in July 2004, claiming there is no evidence of a municipal policy or custom, and no evidence of negligent training or supervision that might have caused the events in this case to occur.  Defendants attached copies of City of Albuquerque policies concerning the proper use of force and training requirements for police officers.  [MSJ, Exhs. A, B]  Subsequently, Plaintiff was granted an opportunity to supplement his response to this motion for summary judgment following the completion of discovery (Doc. 89).  However, although discovery has closed some

time ago, Plaintiff has never filed such a supplement.  Furthermore, Plaintiff's original response to the motion pointed to no evidence of a policy or custom allowing or tolerating the use of excessive force, or of any failure to adequately train Defendants Arbogast or Hoffman.  Since Defendant City of Albuquerque has pointed out the lack of evidence supporting Plaintiff's § 1983 municipal-liability claim, and Plaintiff has not come forward with any evidence specifically establishing the elements of such a claim, summary judgment will be granted on that claim.  *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (where movant points out to district court there is an absence of evidence supporting the nonmovant's case, nonmovant must set forth specific facts showing a genuine issue for trial); *Winters v. Bd. of County Comm'rs*, 4 F.3d 848, 855 (10th Cir. 1993) (where no evidence of policy, custom, or inadequate training was produced, summary judgment for county was appropriate).

Defendant City also asks for summary judgment on Plaintiff's state-law claims, again pointing out there is no evidence of any action on the City's part that might have caused the events that led to this case.  Plaintiff's state-law claims against the City are based on a theory that the City negligently caused the events in question, by failing to properly train or supervise Defendants Arbogast or Hoffman.  Again, however, Plaintiff has failed to produce any evidence of such negligence.  Summary judgment will also be granted to the City on the state-law claims.

The final issue in this motion is Defendants' request to dismiss Plaintiff's claim for punitive damages.  It is not clear whether Defendants believe they are entitled to summary judgment on this issue as to all Defendants, or as to the City alone.  Although Defendants' arguments are that punitive damages are not available against the City as a matter of law, their request for relief is a request to dismiss the entire claim for punitive damages.  Since summary judgment is being

2

granted on all claims against the City, the punitive damages claim is also subject to summary judgment insofar as it is directed against the City.  However, to the extent the request to dismiss the punitive damages claim is directed at Defendants Arbogast and Hoffman, summary judgment is not appropriate at this time.  As discussed below, there are factual issues that must be resolved before a determination can be made as to whether these Defendants' actions rose to a level justifying the imposition of punitive damages.  *See Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992) (punitive damages may be awarded in § 1983 case if defendants exhibited reckless or callous indifference to plaintiff's constitutional rights).

**Defendant Hoffman's Motion for Summary Judgment:**  Defendant Hoffman was not initially named as a party to this lawsuit.  After Hoffman was deposed, however, Plaintiff learned for the first time that Hoffman had assisted Defendant Arbogast in the physical altercation that resulted in Plaintiff being shocked with a taser and handcuffed.  Plaintiff requested and was granted permission to amend his complaint to name Hoffman as a defendant, and filed an amended complaint.  Hoffman now asks for summary judgment on Plaintiff's claims of arrest without probable cause, excessive force, deprivation of equal protection, false arrest, and assault and battery.  In addressing Hoffman's motion, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

3

The Court initially notes Plaintiff's concession that discovery has failed to reveal any facts supporting his equal-protection claim under the Fourteenth Amendment.  In addition, Defendants have filed an unopposed motion to dismiss this claim.  Summary judgment will therefore be granted on that claim, as to both Defendant Hoffman and Defendant Arbogast.[1]

Defendant Hoffman's argument concerning the excessive-force claim is as follows:  (1) Hoffman had nothing to do with Plaintiff's detention until she saw Defendant Arbogast struggling to handcuff Plaintiff; (2) at that point, Hoffman in good faith relied on Arbogast's probable-cause determination that an arrest of Plaintiff was warranted; (3) if there is probable cause for an arrest, an officer is entitled to use a reasonable amount of force in effectuating that arrest; (4) there is no factual dispute as to the amount of force Hoffman used, and that amount of force was constitutionally reasonable as a matter of law; and (5) Hoffman is therefore entitled to qualified immunity.  The Court finds there are factual disputes concerning several of these assertions.

A claim of excessive force is analyzed under the "objective reasonableness" standard. *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001).  This standard requires an inquiry into the factual circumstances of every case; "relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Id.*  The reasonableness standard is clearly established for purposes of a § 1983 action. *Id.*

---

[1]It should be noted that Defendant Gilbert Gallegos was earlier dismissed from the case in his individual capacity.  In his official capacity, Defendant Gallegos is the equivalent of the City of Albuquerque; therefore, by granting summary judgment to the City the Court has in effect granted summary judgment to Gallegos in his official capacity.  *See Barney v. Pulsipher*, *supra*, 143 F.3d at 1307, n. 4 (suit against individual defendants in official capacities is essentially same as a suit against municipal defendant).

There is conflicting evidence as to whether Plaintiff did anything at all that might have been reasonably construed as a crime before he was arrested. Defendant Arbogast maintains that Plaintiff threatened him by getting into a fighting stance, refusing to obey lawful orders, and uttering obscenities. [Resp. to MSJ, Exh. A, pp. 25-26] Arbogast also testified that Plaintiff had turned to leave when Arbogast grabbed his arm to arrest him for assaulting a police officer, among other crimes, and that Plaintiff attempted to pull out of his grasp. [*Id.*, pp. 26-27] However, Ms. Smith, the suspect in the incident that led to the encounter between Plaintiff and the officers, claims instead that the police officers on the scene yelled at Plaintiff to shut his dog up, and then "rushed" Plaintiff to the ground as soon as he said the dog would not hurt anyone and the officers should be nice to Ms. Smith. [*Id.*, Exh. D, pp. 22-26] Defendant Hoffman testified that she did not hear Plaintiff say any obscenities, and did not see him do anything threatening except puff his chest out in an aggressive manner when he walked across the street. [*Id.*, Exh. B, p. 17] Finally, Plaintiff testified that he did not fight against Defendant Arbogast, that he was leaving when he was "jumped on," and that he did not try to prevent the officers from handcuffing him. [*Id.*, Exh. C, pp. 116-17]

Faced with this conflicting evidence, Defendant Hoffman does not try to argue there was probable cause, as a matter of undisputed fact, to arrest Plaintiff. Instead, she points to her testimony that she did not see or hear anything that went on between Plaintiff and Arbogast, until she turned her head and saw Arbogast struggling to handcuff Plaintiff. [MSJ, Exh. A, pp. 15-16] Hoffman then went to help Arbogast, grabbed one of Plaintiff's arms, and immediately ended up on the ground on top of Plaintiff. [*Id.*] She then "contained" Plaintiff, at Arbogast's request, while Arbogast retrieved his taser and shocked Plaintiff into submission. [*Id.*, p. 21] Defendant

Hoffman argues that she was relying on Arbogast's probable-cause determination when she helped Arbogast arrest Plaintiff, and she is therefore entitled to qualified immunity on the excessive-force claim.  In effect, she is arguing that if an officer is unaware of the facts underlying another officer's attempts to arrest a person, but sees that officer struggling to accomplish the arrest, the first officer may use a reasonable amount of force to assist the second officer, even if there actually were no constitutional grounds for the arrest.  It is true that in some circumstances, a police officer is entitled to rely on another officer's determination of probable cause, even if that determination is erroneous, and will be granted qualified immunity on that basis.  *See, e.g., Marshall v. Columbia Regional Hosp.*, 345 F.3d 1157, 1180 (10th Cir. 2003); *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252, 1260 (10th Cir. 1998).  However, the officer's reliance must be objectively reasonable.  *Oliver v. Woods*, 209 F.3d 1179, 1191 (10th Cir. 2000).  This presents factual issues on the present record.

Despite Hoffman's denials that she knew what was transpiring between Arbogast and Plaintiff before she intervened to help Arbogast, the Court finds a question of fact as to that issue.  There is evidence suggesting Hoffman was not standing far from the other two.  [*See, e.g.,* Resp. to MSJ, Exh. A to Exh. A, picture drawn by Arbogast showing relative positions of participants]  She  was therefore in such a position that a reasonable factfinder could determine she actually did know what was happening when she decided to assist Arbogast in arresting Plaintiff.  Accordingly, there is a question of fact as to whether she did indeed reasonably rely on Arbogast's probable-cause determination when she decided to assist Arbogast in arresting Plaintiff, rather than intervening to stop Arbogast's use of force against Plaintiff.  Where an officer is in a position to observe the situation for herself, she cannot blindly rely on the fact that

6

another officer has decided there is probable cause to arrest, and proceed to assist that officer's use of force.  *See, e.g., Baptiste*, 147 F.3d at 1260 (where there is an issue of fact as to whether an officer actually relied a different officer's probable-cause determination, summary judgment is inappropriate); *see also McCray v. City of Dothan*, 2003 WL 23518420 (11th Cir.  unpub.) (where two officers were in a position to know that plaintiff had not done anything to justify the use of force by a third officer, first two officers were obligated not only to refrain from using force themselves, but to intervene in order to prevent third officer from doing so).

Furthermore, there is a question of fact as to whether Hoffman's actions constituted a reasonable use of force even if there was probable cause to arrest Plaintiff.  Hoffman assisted Arbogast in taking Plaintiff to the ground face-first, even though Plaintiff claimed he was not fighting back and was simply trying to leave the scene.  [Resp. to MSJ, Exh. B, p. 16; Exh. C, p. 116]  She also assisted Arbogast in his efforts to use his taser on Plaintiff, even though according to Plaintiff he was not resisting the officers and already had one arm being held behind his back.  [*Id.*, Exh. B, p. 21; Exh. C, pp. 117-19] [2]   If Plaintiff was in fact not resisting, the use of a taser to subdue him would not be an objectively reasonable use of force.  Thus, there are issues of fact as to whether Hoffman actually relied on Arbogast's determination of probable cause; whether such probable cause existed; and whether both officers' use of force was reasonable, even if there

---

[2]The Court notes Hoffman's deposition testimony that she did not know Arbogast was going to use his taser; however, she also testified that Arbogast asked her to secure Plaintiff while Arbogast got his taser.  [*Id.*]  Based on this testimony, a reasonable factfinder could decide that Hoffman knew Arbogast planned to use his taser.

was probable cause to try to arrest Plaintiff.  Hoffman's motion will therefore be denied insofar as she requests qualified immunity with respect to Plaintiff's constitutional claims.[3]

Hoffman also asks for summary judgment on Plaintiff's state-law claims, for the same reasons as her arguments concerning the constitutional claims.  The same disputed facts discussed above preclude a grant of summary judgment on these claims.

**Motion to Dismiss:**  All Defendants moved to dismiss Plaintiff's Eighth Amendment claims and negligence claims.  As with the Fourteenth Amendment claim discussed above, Defendants have now filed an unopposed motion to dismiss the Eighth Amendment claims, which has been granted.  Summary judgment on those claims is therefore appropriate.

Defendants request dismissal of Plaintiff's negligence claims on two grounds:  first, that negligence cannot be the basis of a constitutional violation; and second, that mere negligence, standing alone, is not actionable under the New Mexico Tort Claims Act ("TCA").  The Court's review of the amended complaint does not indicate that Plaintiff was attempting to base his constitutional claims on the allegations of negligence.  Instead, the negligence claims are state-law claims under the TCA.  Plaintiff's response to the motion to dismiss makes this clear, as Plaintiff states he has alleged negligence claims in the alternative, while also raising claims of intentional

---

[3]With respect to Plaintiff's wrongful-arrest claim, Hoffman makes the same argument as she did concerning the excessive-force claim:  that she did not personally make the decision to arrest Plaintiff, but simply relied on Arbogast's probable-cause determination, therefore acted in good faith as a matter of law, and is entitled to qualified immunity.  This argument fails for the same reasons discussed above--there are questions of fact as to whether Hoffman was in a position to know there was no probable cause to arrest Plaintiff for anything, and whether she told the truth when she claimed she did not hear or see any of the interaction between Plaintiff and Arbogast prior to the time she helped Arbogast take Plaintiff down and subdue him.

constitutional violations.  Defendants' first argument, therefore, is not a valid basis for dismissing the negligence causes of action contained in the amended complaint.

Plaintiff responded to the second argument by clarifying his negligence claims, explaining they are of two types.  Plaintiff maintains, first, that one of the officers who arrested him, either Hoffman or Arbogast, acted negligently (at a minimum) in allowing the other officer to arrest him without probable cause and use excessive force in doing so.  This claim, therefore, is an alternative to Plaintiff's claim that both officers committed intentional or reckless constitutional violations during the incident.  As Plaintiff explains, under the TCA a law enforcement officer can be liable if he or she negligently causes or allows another person to commit one of the violations enumerated in NMSA § 41-4-12, which include battery, assault, and violations of constitutional rights.  *See Cross v. City of Clovis*, 755 P.2d 589, 590 (N.M. 1988).  This aspect of Plaintiff's negligence claim contends that either Hoffman or Arbogast acted negligently in allowing the other officer to commit a battery, assault, or violation of the Fourth Amendment.[4]  As such, this claim states a valid cause of action under the TCA.

The second aspect of Plaintiff's negligence claims has already been addressed above, in the discussion of the motion for partial summary judgment concerning the municipal-liability claims.  Plaintiff maintains that supervisors of Hoffman and Arbogast, as well as the City itself, committed acts of negligent hiring, negligent supervision, or failure to properly train the officers. As Plaintiff

---

[4]The Court recognizes that the amended complaint refers to acts by "other law enforcement officers," which is confusing because there was no other officer involved in the incident besides Hoffman and Arbogast.  As Plaintiff's response clarifies, however, the allegations of the amended complaint are intended to hold either Hoffman or Arbogast liable for any negligent acts they might have committed that allowed the other officer – namely Hoffman or Arbogast – to commit one of the enumerated violations found in § 41-4-12.

points out, such claims of negligent actions by supervisors, if they cause a battery, assault, or constitutional violation, are actionable under the TCA. *See McDermitt v. Corrections Corp.*, 814 P.2d 115, 117 (N.M. App. 1991). In this case, however, as noted above, Plaintiff has adduced no evidence of any action by a supervisor that had any effect on the incident that led to this lawsuit. There is no evidence of negligent supervision in the record, no evidence of negligent hiring or retention, and no evidence of a failure to train either officer. For that reason, as already stated above, the Court will grant summary judgment to the City on the state-law claims as well as the constitutional municipal-liability claims.

      **Conclusion:** Based on the foregoing discussion, the Court will grant the motion for partial summary judgment concerning municipal liability, except to the extent that motion requests judgment on the punitive-damages claim against the individual Defendants. The Court will also grant Defendant Hoffman's motion for summary judgment, insofar as it concerns Plaintiff's equal-protection claim. As to all other claims raised against Hoffman, however, the motion will be denied. Finally, the motion to dismiss will be granted to the extent it requests dismissal of the Eighth Amendment claim and any state-law negligence claim against the City. That motion will be denied, however, to the extent it concerns the state-law negligence claims against Defendants Hoffman and Arbogast.

## ORDER

      A Memorandum Opinion having been entered in this case, it is ORDERED that Defendants' motions for partial summary judgment and summary judgment as to Defendant Hoffman (Docs. 19, 127) be, and hereby are, GRANTED in part and DENIED in part. It is

further ORDERED that Defendants' motion to dismiss (Doc. 131) be, and hereby is, GRANTED

in part and DENIED in part.

Dated this 17th day of March, 2005.


BRUCE D. BLACK
United States District Judge


**ATTORNEYS:**
**For Plaintiff:**
Robert J. Gorence
Louren Oliveros

**For Defendants:**
Robert M. White
Stephanie M. Griffin

11